UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEXEY SARAEV, et al.,<br>Plaintiffs,<br><br>v.<br><br>MARCO RUBIO, U.S. SECRETARY OF STATE, et al.,<br><br>Defendants. | No. 25-cv-01740-ZMF |

## MEMORANDUM OPINION

Since January 2024, Plaintiffs' EB-1A visa applications have been in administrative processing. Plaintiffs now seek an order to compel Defendants to immediately issue a final decision on Plaintiffs' visa applications. *See* Compl. ¶¶ 51–52, ECF No. 1. In response, Defendants filed the instant motion to dismiss. *See* Motion to Dismiss ("Defs.' Mot. Dismiss") 1–23, ECF No. 8. For the reasons set forth herein, the Court GRANTS Defendants' motion.

### I.  BACKGROUND

#### A.  Legal Background

The Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1101 et seq., governs the EB-1A visa—an employment-based visa for foreign nationals with extraordinary abilities in the sciences, arts, education, business, or athletics. *See* 8 U.S.C. § 1201. If a consular officer determines that an applicant lacks sufficient information to establish visa eligibility, the officer may refuse the application under § 221(g) of the INA. *See* 8 U.S.C. § 1201(g). Specifically, no visa shall be issued to an applicant if:

> (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa . . . , (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law.

*Id.*

  B. <u>Factual Background</u>

Plaintiff Saraev, a citizen of Russia, is a highly skilled software engineer. *See* Compl. ¶ 68. Plaintiff Saraev is currently collaborating with a U.S.-based technology company to provide high-level software engineering services. *Id.* Plaintiff Saraev's inability to immigrate to the U.S. has prevented him from fully participating in company operations and fulfilling the duties expected of him. *Id.* at 72. Plaintiff Saraev alleges financial losses, setbacks, and emotional turmoil as a result of Defendants delay in completing administrative processing. *Id.* at 70–71.

In December 2024, Plaintiff Saraev submitted an EB-1A visa application to the U.S. Citizenship and Immigration Services ("USCIS"). *See* Compl. ¶¶ 56, 58. Plaintiff Saraeva, spouse of Plaintiff Saraev, is a derivative applicant for an immigrant visa. *See id.* at 57.  In January 2024, USCIS approved the petition. *See id.* at 59. On February 28, 2024, Plaintiffs submitted additional forms and made the required payments. *See id.* at 62. On July 30, 2024, a consular officer at the Embassy interviewed Plaintiffs and informed them that their application required further administrative processing under Section 221(g) of the INA. *See id.* at 63. The Embassy asked Plaintiffs to submit additional documentation, including Plaintiff Saraeva's CV and university transcripts. *See id.* On August 2, 2024, Plaintiffs submitted the requested documentation to the Embassy. *See id.* at 64.

On August 5, 2024, the Embassy requested Plaintiffs to submit additional information via the email questionnaire (DS-5535 form). *See* Compl. ¶ 65. On August 8, 2024, Plaintiffs submitted the requested documentation. *See id.*

To date, Plaintiffs' visa application status on the State Department website remains "Refused." *Id.* at 66. It further states, "[i]f you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing. You will receive another adjudication once such processing is complete." Compl., Ex. C, ECF No. 1-3.

### C. Procedural Background

On June 2, 2025, Plaintiffs filed suit against Marco Rubio, in his official capacity as U.S. Secretary of State, and Robert Jachim, in his official capacity as Director of Screening, Analysis, and Coordination. *See* Compl. ¶ ¶ 20–21. Plaintiffs allege that Defendants' failure to issue a decision on their visa eligibility constitutes severe, particularized, and concrete injury. *See id.* at 67. Plaintiffs seek an order to compel Defendants to immediately and forthwith take all appropriate action to issue final decisions on Plaintiffs' immigrant visa applications. *See id.* at 1.

On June 20, 2025, the assigned district judge referred this case, with the parties' consent, to the undersigned to conduct all proceedings. *See* Order Referring Case to Mag. Judge 1, ECF No. 5. On August 4, 2025, Defendant filed a Motion to Dismiss pursuant to Federal Rules of Procedure Rule 12(b)(1) and 12(b)(6). *See* Defs.' Mot. Dismiss at 7. The motion is now ripe for decision. *See* Response in Opposition to Defendants' Motion to Dismiss ("Pls.' Opp'n"), ECF No. 9; Defendants' Reply in Support of Defendants' Motion to Dismiss ("Defs.' Reply"), ECF No. 10.

## II. LEGAL STANDARD

### A. Subject Matter Jurisdiction – Federal Rules of Civil Procedure 12(b)(1)

A court must dismiss a complaint that "lacks subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). On a 12(b)(1) motion to dismiss, the plaintiff bears the burden of establishing subject-matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The court will "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

### B. Stating a Claim Upon Which Relief Can Be Granted – Federal Rules of Civil Procedure 12(b)(6)

A court must dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss under Rule 12(b)(6), the court must "treat the complaint's factual allegations as true . . . and . . . grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citations omitted). However, "the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the

complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## III.  DISCUSSION

### A.  The Doctrine of Consular Nonreviewability

The doctrine of consular nonreviewability establishes that a consular officer's final decision to approve or deny a visa application is not subject to judicial review. *See Dep't of State v. Muñoz*, 602 U.S. 899, 906 (2024). Defendants claim that the doctrine of consular nonreviewability bars Plaintiffs' claims since the State Department refused Plaintiffs' applications under § 221(g). *See* Defs.' Mot. Dismiss at 12–15. Defendants are incorrect. This was not a final decision. First, Defendants rely on *Karimova v. Abate* to argue that an initial visa refusal under § 221(g) is a final decision. No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024). *See* Defs.' Mot. Dismiss at 5. "But *Karimova* is unpublished. And 'a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition.'" *Haeri Mehneh v. Blinken*, No. 24-cv-1374, 2024 WL 5116521, at *5 (D.D.C. Dec. 16, 2024) (quoting D.C. Cir. R. 36(e)(2) and citing U.S. Ct. App. D.C. Cir., *Handbook of Practice and Internal Procedures*). This Court again joins the other courts in this district that have refused to follow *Karimova*. *See Haeri Mehneh*, 2024 WL 5116521, at *5 (collecting cases). Second, "[t]he definition of final demonstrates this [was not a final decision]: '[m]arking the last stage of a process; leaving nothing to be looked for or expected.' *Final, Oxford English Dictionary*, (2d ed. 1989). But [Plaintiffs are] not in the last stage of the process. The State Department explicitly directed [them] to look for or expect '*another* adjudication once such processing is complete. [Compl., Ex. C, ECF No. 1-3].'" *Haeri Mehneh*, 2024 WL 5116521, at *5

B.  Clear, Nondiscretionary Duty

"To state a claim for unreasonable delay [under the APA], [p]laintiffs must . . . allege that the agency 'failed to take a discrete agency action that it is required to take.'" *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)).

Defendants argue that Plaintiffs fail to identify a discrete agency action that consular officers are required to take. *See* Defs.' Reply at 3–4. "[Defendants'] argument has generally met with a frosty reception from courts in this District, several of which have concluded that both the APA and State Department regulations create a clear duty to adjudicate visa applications within a reasonable time." *Rashidian v. Garland*, No. 23-cv-1187, 2024 WL 1076810, at *5 (D.D.C. Mar. 8, 2024). "Granting or refusing a visa to [a plaintiff] who has been interviewed is clearly a discrete agency action . . . required by both the APA and the Department's own regulation." *Khazaei v. Blinken*, No. 23-cv-1419, 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023); *see also Vulupala v. Barr*, 438 F. Supp. 3d 93, 100 (D.D.C. 2020) ("Granting or refusing a final visa application is a mandatory agency action."). First, the APA "imposes a general but nondiscretionary duty upon the [State Department] to pass upon a matter presented to it 'within a reasonable time,' 5 U.S.C. § 555(b), and authorizes [this Court] to 'compel agency action unlawfully withheld or unreasonably delayed,' *id.* § 706(1)." *Haeri Mehneh*, at *6 (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003)). Second, "Section 42.81(e) of the INA creates a nondiscretionary duty requiring consular officers to reconsider within a reasonable time visa applications refused under Section 221(g) and placed under administrative processing." *Id.* at *6 (citing *Ghannad-Rezaie v. Laitinen*, No. 24-cv-11665, 2024 WL 4849587, at *3 (D. Mass. Nov. 21, 2024)). Specifically, 22 CFR § 42.81(a) states "[w]hen a visa application has been properly

completed and executed before a consular officer in accordance with the provisions of INA and the implementing regulations, the consular officer must either issue the visa, [or] refuse the visa." "Plaintiffs have identified a clear, non-discretionary duty requiring a consular officer to adjudicate [their] visa application[s]." *Haeri Mehneh*, 2024 WL 5116521, at *6.

    C.    *TRAC* Factors

"Courts review claims of unreasonable delay in processing immigration petitions according to 'the same [standard] under both § 706(1) of the APA and the Mandamus Act, 28 U.S.C. § 1361.'" *Ahmadi v. Scharpf*, No. 23-cv-953, 2024 WL 551542, at *4 (D.D.C. Feb. 12, 2024) (quoting *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017)). In evaluating "a claim of unreasonable delay" courts analyze "whether the agency's delay is so egregious as to warrant mandamus." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecommunications Research & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 79 (D.C. Cir. 1984). To determine unreasonably delay, court analyze the six "*TRAC* factors":

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (cleaned up).

        1.    *First and Second TRAC Factors*

The first two factors are typically considered together. *See Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020). Those factors evaluate "'whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable

7

rationale.'" *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 161–62 (D.D.C. 2022) (quoting *Ctr. for Sci. in the Pub. Int. v. U.S. Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014)).

"Congress has supplied no timeline for processing waiver applications." *Didban v. Pompeo*, 435 F. Supp. 3d 168, 176 (D.D.C. 2020). "Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020).[1] "District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Id.* (citation omitted) (collecting cases). In addition, "many courts evaluating similar delays have declined to find a two-year period to be unreasonable as a matter of law." *Ghadami v. United States Dep't of Homeland Sec.*, No. 19-cv-397, 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020).

Plaintiffs filed suit eleven months after Plaintiffs' July 30, 2024 interview. Pls.' Opp'n at 4. This delay is not unreasonable by comparison. *See, e.g.*, *Arab v. Blinken*, 600 F. Supp. 3d 59, 70 (D.D.C. 2022) (finding thirty months not unreasonable); *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021) (finding twenty-nine months not unreasonable). Accordingly, the first and second *TRAC* factors favors Defendants.

2. *Third and Fifth TRAC Factors*

*TRAC* factors three and five concern the delay's impacts on Plaintiff's health, welfare, and interests prejudiced. *See TRAC*, 750 F.2d at 80. Plaintiff Saraev argues that the delay has put

---

[1] Plaintiffs allege a Congressional timetable exists because 8 U.S.C. § 1571(b) states that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." See Pls.' Opp'n at 38 (citing 8 U.S.C. 1571(b)). However, "[t]he 180-day period cited by Plaintiff is no more than an 'aspirational statement' that does not establish a firm timetable." *Khan v. Bitter*, No. 23-cv-3046, 2024 WL 3887378, at *3 (D.D.C. Aug. 20, 2024) (quoting *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 344 (D.C. Cir. 2023)). Plaintiffs themselves concede that the language in the provision is "merely precatory." Pls.' Opp'n at 38.

his career progression on hold indefinitely. *See* Compl. ¶¶ 10; *See* Pls.' Opp'n, Ex. B. Plaintiff Saraev also argues that he suffers from persistent anxiety and sleep disturbance from the delay. *See* Pls.' Opp'n, Ex. B. These emotional impacts are not sufficiently detrimental to his health and welfare. *See Mohammad v. Blinken*, 548 F. Supp. 3d 159, 168–69 (D.D.C. 2021) (finding factors three and five weigh in favor of the government in spite of emotional, financial, and medical hardship as they do not outweigh "the government's interests in balancing its own priorities and determining how to allocate scarce resources."). Nor are the alleged professional and financial harm sufficient. *See Da Costa*, 80 F.4th at 345 (finding that the "financial harms Bega alleges, along with the uncertainty that results any time an individual must continue to wait to secure a benefit, are insufficient to tip *TRAC* factors three and five in his favor."). Accordingly, the third and fifth factors weigh in favor of the Defendant.

### 3. *Fourth TRAC Factor*

The fourth *TRAC* factor, the effect of granting relief on the agency's competing priorities, weighs in Defendants' favor. It "carries the greatest weight in many cases." *Sawahreh*, 630 F. Supp. 3d at 163 (quoting *Milligan*, 502 F. Supp. 3d at 319 (quotation marks omitted)). Consular "[p]rocessing capacity is presently a zero-sum game." *Murway v. Blinken*, No. 21-cv-1618, 2022 WL 493082, at *4 (D.D.C. Feb. 16, 2022). As evidence of this, Defendants have provided that as of April 7, 2024, there were 40 analysts addressing a backlog of 72,000 pending requests. *See* Compl., Ex. A, Declaration of Robert Jachim at ¶¶ 22-25. And "Federal agencies, not the Court, are best positioned to manage the backlog of immigration cases." *Dastagir*, 557 F. Supp. 3d at 167. Hence, "judicial 'reordering[s] [of] agency priorities' are inappropriate where '[t]he agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way.'" *Ghadami*, 2020 WL 1308376, at *9

(quoting *In re Barr Lab'ys., Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991)). "While the effect of an individual case would be minimal, the accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021).

Following other courts, this Court will not engage in judicial reordering by allowing Plaintiffs to skip the line. *See, e.g.*, *Da Costa*, 80 F.4th at 343 ("moving Plaintiffs' [immigration] petitions to the front of the line would disrupt competing agency priorities with no overall improvement in the USCIS backlog."); *Arab*, 600 F. Supp. 3d at 71 (deferring to "the State Department's priority-setting and resource-allocation" in I-130 visa application adjudication). Accordingly, this factor also weighs in favor of Defendants.

        4.    *Sixth TRAC Factor*

The sixth *TRAC* factor requires the court consider "whether the agency's bad faith caused the delay." *Sawahreh*, 630 F. Supp. 3d at 164. "The court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80 (internal citations and quotations omitted). While a lack of information from Defendants may be frustrating, it is not proof of bad faith. *See* Defs.' Mot. Dismiss at 22. Plaintiffs have not alleged bad faith regarding the Defendants' motivations. *Id.* And the sixth factor has been found inapplicable where a plaintiff fails to make such allegations. *See Arabzada v. Donis*, 725 F. Supp. 3d 1, 17 (D.D.C. 2024). "As *TRAC* directs, . . . the lack of plausible allegations of impropriety does not weigh against [Plaintiffs] but instead is neutral in the analysis." *Hajizadeh v. Blinken*, No. CV 23-1766, 2024 WL 3638336, at *6 (D.D.C. Aug. 2, 2024) (quoting *Fakhimi v. Dep't of State*, No. 23-cv-1127, 2023 WL 6976073, at *11 (D.D.C. Oct. 23, 2023)). Thus, the sixth *TRAC* factor does not favor either side.

## IV. CONCLUSION

Taken together, the *TRAC* factors weigh in favor of Defendants and Plaintiffs have "not plausibly allege[d] an unreasonable delay." *Azeez v. Murphy*, No. 23-cv-1947, 2024 WL 3924565, at *6 (D.D.C. Aug. 23, 2024). As such, Plaintiffs have failed to state a claim. *See id.* (dismissing similar case for failing to state a claim where the first, second, and fourth *TRAC* factors favored the defendant).

Date: December 2, 2025

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE